UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHAWN ALBRIGHT,

                         Plaintiff,                             **OPINION AND ORDER**

        -against-                                23 Civ. 7152 (JCM)

THE CITY OF PEEKSKILL, Police Officers
ANTONY[1] NAPPI, R. SANTOS, and M. NOLTE, in
their individual and official capacity as a City Of
Peekskill Police Department,
ARACELY MAZZAMURRO and
NOEL DUQUE,

                          Defendants.
------------------------------------------------------------X

      Plaintiff Shawn Albright ("Plaintiff") commenced this action pursuant to 42 U.S.C. §

1983 against Defendants City of Peekskill; Police Officers Anthony Nappi, R. Santos, and M.

Nolte ("Police Officers") (collectively, "City Defendants"); Aracely Mazzamurro

("Mazzamurro"); and Noel Duque.[2] (Docket No. 1).  Presently before the Court are Defendants'

motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 (Docket Nos. 26,

30) ("Motions").  Plaintiff opposed the Motions, (Docket Nos. 37, 40), and Defendants replied,

(Docket Nos. 41, 42).

      For the reasons set forth herein, the Motions are granted in their entirety.[3]

---

[1] Defendant Anthony Nappi's name is misspelled in the caption of the Complaint. (Docket No. 1).

[2] Plaintiff discontinued his action against Noel Duque with prejudice. (Docket No. 22).

[3] The parties consented to the undersigned for all purposes, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the
Federal Rules of Civil Procedure. (Docket No. 17).

# I. BACKGROUND

## A. Relevant Facts[4]

The following facts are construed in the light most favorable to Plaintiff as the party opposing summary judgment. *See Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018). Any disputes of material fact are noted.

On August 13, 2020, Mazzamurro and her brother, Noel Duque, drove to 1215 Howard Street in Peekskill, New York (the "Property"), which she owned, to show a unit in the building to a potential renter. (Docket Nos. 27 ¶¶ 1-2; 36 ¶¶ 1-2). As she entered the Property, she observed approximately five people visiting Lorena Lowery, her downstairs tenant. (Docket Nos. 34-1 ¶¶ 3-4; 39 ¶¶ 3-4). One of the visitors was Plaintiff, a childhood friend of Arthur Burnett who lived with his girlfriend, Ms. Lowery, in the basement apartment. (Docket No. 36 ¶ 1).

## 1. Altercation

Plaintiff asserts that he attempted to leave the Property at approximately 8:00 p.m. (Docket No. 35 ¶ 3). However, a "small truck like vehicle" was blocking his car. (*Id.* ¶ 4). Plaintiff tried to maneuver around the vehicle, but was unsuccessful, so he asked Mr. Burnett if he knew the vehicle's owner. (*Id.* ¶ 5). Mr. Burnett and Ms. Lowery did not know who owned the vehicle, but they suspected it belonged to guests of an upstairs tenant. (*Id.* ¶ 6). Mr. Burnett called the upstairs tenant while Plaintiff sat outside the basement apartment under the balcony. (*Id.* ¶ 7). The upstairs tenant said that he was not home and did not know who owned the

---

[4] The following facts are taken from: (1) Mazzamurro's Statement of Material Facts submitted pursuant to Local Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1"), ("Docket No. 34-1"), (2) the City Defendants' Statement of Material Facts submitted pursuant to Local Rule 56.1, ("Docket No. 27"), (3) Plaintiff's Counterstatement to Mazzamurro's Statement of Material Facts, ("Docket No. 39"), (4) Plaintiff's response to the City Defendants' Statement of Material Facts, ("Docket No. 36"), (5) Plaintiff's Statement of Material Facts, ("Docket No. 35"), and (6) the affidavits and exhibits submitted by the parties in support thereof. All page number citations herein refer to the page number assigned upon electronic filing unless otherwise noted.

vehicle. (*Id.* ¶ 8). Mr. Burnett then went to other apartments in the building searching for the vehicle's owner. (*Id.* ¶ 9). He eventually knocked on the door of the upstairs apartment where Mazzamurro was located, while Plaintiff allegedly remained downstairs. (*Id.* ¶¶ 10-11).[5]

Plaintiff asserts that Mazzamurro opened the door and asked "what the problem was." (*Id.* ¶ 12). Mr. Burnett asked her if she knew the owner of the car. (*Id.* ¶ 11).[6] Mazzamurro told Plaintiff and Mr. Burnett that she owned the vehicle and was showing the apartment but would move the vehicle in about five minutes. (*Id.* ¶ 13). According to Plaintiff, Mr. Burnett asked Mazzamurro who she was, and Mazzamurro replied, "I'm the owner." (*Id.* ¶ 14). Plaintiff waited for Mazzamurro to move the car, and after approximately 15 minutes, Mr. Burnett went upstairs and again asked Mazzamurro to move her vehicle because Plaintiff needed to leave. (*Id.* ¶¶ 16-17). He added that Plaintiff did not want to damage Mazzamurro's vehicle by "trying to squeeze by [it]." (*Id.* ¶ 18). Plaintiff alleges that Mazzamurro began yelling at them, explaining that she was the building owner and would move her car "whenever she was ready." (*Id.* ¶ 19). Plaintiff, Mr. Burnett, and Mazzamurro continued to argue. (*Id.* ¶ 20). Mr. Duque and other people in the apartment where Mazzamurro was located "appeared at the top of the porch and joined in the argument." (*Id.*). Shortly thereafter, Mazzamurro said that she was calling the police. (*Id.* ¶ 21).

Mazzamurro's version differs. According to Mazzamurro, at approximately 8:30 p.m., she was showing an apartment at the Property. (Docket No. 34-1 ¶ 2). While she was showing the unit, someone knocked on the door. (*Id.* ¶ 5). She opened the door and asked the person if she could help. (*Id.*). She saw Plaintiff and Mr. Burnett engaged in an "angry conversation." (*Id.* ¶ 6). Mr. Burnett asked Mazzamurro if the truck belonged to her, and she confirmed that it did.

---

[5] Plaintiff's Statement of Material Facts has two paragraphs numbered "11." (Docket No. 35 at 2-3). Here, the Court cites to the first Paragraph 11, starting on page 2.

[6] Here, the Court cites to the second paragraph 11 of Plaintiff's Statement of Material Facts, starting on page 3.

(*Id.* ¶ 7).  Mazzamurro alleges that Plaintiff told her directly, "Move that fucking truck out of my way." (*Id.* ¶ 8).  She contends that Plaintiff had a knife and threatened to slash her tires and kill her and her brother. (*Id.* ¶ 12).  Thereafter, Mazzamurro called the police. (*Id.* ¶ 13).

**2.  Police Officers' Investigation and Plaintiff's Arrest**

During the 911 call, Mazzamurro told the operator that Plaintiff threatened her with a knife, and said he was going to "flatten her tires." (Docket Nos. 27 ¶ 19; 36 ¶ 19; 38-21).  The Police Officers were dispatched and arrived at the Property within a few minutes. (Docket Nos. 27 ¶¶ 20-21, 24; 36 ¶¶ 20-21, 24).  Officer Nappi responded with a Peekskill Police Department K9 unit. (Docket Nos. 27 ¶ 22; 36 ¶ 22).  Each officer activated an Axon Bodycam ("Bodycam") on his person. (Docket Nos. 28-6, 28-7, 28-8).[7]

When Officer Nappi first arrived, Mazzamurro rushed to greet the Police Officers. (Docket No. 28-6 at 20:36:24-30).  Ms. Lowery is also seen on the Bodycam walking towards the Police Officers, but Mazzamurro told Ms. Lowery that she wanted to speak to them first. (*Id.* at 20:36:35-40).  Officer Nappi walked back to his police car to obtain a face mask, and then he returned to the group. (*Id.* at 20:36:40–20:37:05).  As he returned, Ms. Lowery can be heard on his Bodycam saying, "I honestly did not see that." (*Id.* at 20:37:00-05).  Mazzamurro then told Officer Nappi that Plaintiff  "pulled a knife on [her] and [her] brother." (*Id.* at 20:37:05–20:37:08).

Officer Nappi walked over to Officers Nolte and Santos, who were now interviewing Mr. Burnett outside of his basement apartment. (*Id.* at 20:37:11–20:37:22).  Mr. Burnett explained to the Police Officers that when he asked Mazzamurro to move her car, she initially told him to

---

[7] The Court has reviewed each officer's Bodycam footage, but will focus on the events from the perspective of Officer Nappi's Bodycam since it captures the key events and Plaintiff's claims focus primarily on Officer Nappi's conduct on August 13, 2020.

wait ten minutes, and he and Plaintiff complied. (*Id.* at 20:37:22–20:37:30).  However, Mr. Burnett claimed that, after the ten minutes, Mazzamurro said, "[W]e don't have to leave, we own this house[.]" (*Id.* at 20:37:22–20:37:33).  Mr. Burnett told her that his "company" wanted to leave and asked Mazzamurro again to "please pull [her] car up a little bit" to allow Plaintiff to leave the Property, but she did not do so. (Docket Nos. 28-6 at 20:37:34-39; 35 ¶ 30).  Mr. Burnett admitted that Plaintiff was angry and said that he was going to slice Mazzamurro's tires. (Docket Nos. 28-6 at 20:37:40-50; 35 ¶ 31).  Mr. Burnett said he told Plaintiff, "[S]top saying you're going to slice somebody's [sic] tires, ain't none of the shit gonna [sic] happen." (Docket Nos. 28-6 at 20:37:50-53; 35 ¶ 31).  Officer Nolte asked Mr. Burnett if Plaintiff had a "knife or anything." (Docket No. 28-6 at 20:37:53-55).  Mr. Burnett responded, "[H]e didn't have anything," but added, "If he did, I don't know that.  But no, he didn't have anything." (*Id.* at 20:37:53–20:38:00).  Mr. Burnett also denied that Plaintiff threatened to kill Mazzamurro. (*Id.* at 20:38:01-08).  Officer Nolte asked Mr. Burnett to get Plaintiff, who was inside the basement apartment, so the Police Officers could interview him. (*Id.* at 20:38:14-18).  Mr. Burnett unlocked the apartment door, went inside, and came out shortly thereafter with Plaintiff. (*Id.* at 20:38:19-25).

Officer Nappi walked towards where Mazzamurro was talking to Ms. Lowery and asked Mazzamurro to describe the knife she alleged Plaintiff had. (*Id.* at 20:38:25-37).  She initially responded, "I don't know if he threw it out, but he came here," pointing to the bushes, where her brother appeared to be looking for something. (*Id.* at 20:38:25-40).  Officer Nappi clarified his question, and Mazzamurro used her hands to illustrate the weapon's size. (*Id.* at 20:38:40-43).  According to Plaintiff, Mazzamurro "gestur[ed] with her hands and arms to describe a weapon which could only have been a large butcher knife or a machete about 12-15 inches long[.]"

(Docket No. 35 ¶ 37). Mazzamurro told Officer Nappi that Plaintiff said to her, "You don't know who you're messing with," and that he threatened to slash her tires and kill her. (Docket No. 28-6 at 20:38:41-59). She clarified that she did not actually see Plaintiff throw the knife in the bushes because she was not near him at the time, but she believed he did. (*Id.* at 20:39:00-10). Officer Nappi asked Mazzamurro if she wanted Plaintiff arrested, and she responded, "Yes." (*Id.* at 20:39:12-15).

Meanwhile, Plaintiff was speaking with Officers Nolte and Santos outside of the basement apartment. Mazzamurro and her brother identified Plaintiff to Officer Nappi as the individual with the knife. (*Id.* at 20:39:29-34). Officer Nappi then walked to Plaintiff and the other officers. (*Id.* at 20:39:35-45; Docket No. 35 ¶ 39). Mazzamurro followed him, pointed to Plaintiff, and again identified him as the person who threatened her with a knife. (Docket No. 28-6 at 20:39:45-50). Plaintiff argues that when Mazzamurro followed Officer Nappi, she interrupted the Police Officers' interrogation of Plaintiff, "creating a stir by making more allegations." (Docket No. 35 ¶ 39). The Bodycam footage shows that one of the Police Officers told her, "Ma'am, we're not doing this. We're not doing this right now." (Docket No. 28-6 at 20:39:51-53). Officer Nolte asked Plaintiff what happened, and Plaintiff responded, "I was trying to get out." (*Id.* at 20:39:56-20:40:00). Officer Nolte asked, "And what happened beyond that?" (*Id.* at 20:40:00-04). Plaintiff explained that he was "trying to get out" and Mazzamurro said, "ten minutes." (*Id.* at 20:40:04-12). He told the Police Officers that he said he would wait. (*Id.* at 20:40:12-15). Plaintiff claimed that he never threatened to slash Mazzamurro's tires, and he denied displaying any type of knife. (*Id.* at 20:40:15-22). However, this was contradicted by Mr. Burnett and Mazzamurro, both of whom told the Police Officers that Plaintiff threatened to slash Mazzamurro's tires.

Officer Nappi confirmed with Mazzamurro that she wanted Plaintiff arrested and would come to the Police Station to file a complaint. (*Id.* at 20:40:28-37). Then, Officer Nappi placed Plaintiff in handcuffs and searched him, recovering money, a wallet, and keys. (*Id.* at 20:40:40-20:41-40; Docket No. 35 ¶ 63).[8]

Once Plaintiff was placed in the police car, Officer Nappi asked him if he threw a knife in the bushes, noting that "honesty goes a long way," and Plaintiff responded, "I don't know what you're talking about." (Docket No. 28-6 at 20:42:26-38). Officer Nappi and his K9 dog searched the bushes for the knife, but did not find one. (*Id.* at 20:43:00-20:47:25). He and Officer Nolte also checked the garbage bins on the Property. (*Id.* at 20:47:30-20:48:01). Afterwards, Officer Nappi walked to Mr. Burnett and Ms. Lowery, who were standing outside. (*Id.* at 20:48:15-30). He explained that Plaintiff was being arrested for "pull[ing] out a knife," and he asked if he could search their apartment for it. (*Id.* at 20:49:23-30). Both Mr. Burnett and Mr. Lowery refused. (*Id.* at 20:49:31-37). Mr. Burnett asserted that Plaintiff "did not bring [anything] in my house." (*Id.* at 20:50:00-10).

Officer Santos transported Plaintiff to the City of Peekskill Police Department Headquarters and took Mazzamurro's statement. (Docket Nos. 27 ¶ 35; 36 ¶ 35). Mazzamurro and Mr. Duque also signed sworn depositions that Plaintiff had threatened them with a knife. (Docket Nos. 27 ¶ 36; 36 ¶ 36). Plaintiff was charged with Menacing in the Second Degree, in violation of Section 120.14(1) of the Penal Law of the State of New York. (Docket No. 30-5). He was released on his own recognizance. (Docket Nos. 27 ¶ 34; 36 ¶ 34). On October 8, 2021, Plaintiff was acquitted in Peekskill City Court. (Docket No. 35-18).

---

[8] Plaintiff maintains that he had his keys in his hand when the incident started, and Mazzamurro claimed that these were a knife. (Docket Nos. 27 ¶ 18; 36 ¶ 18). However, Plaintiff admits that he never told the Police Officers that he was holding his keys on August 13, 2020. (Docket Nos. 27 ¶ 32; 36 ¶ 32).

**B.  Procedural History**

Plaintiff commenced this action on August 14, 2023. (Docket No. 1).  On January 7, 2025, Mazzamurro filed a motion for summary judgment, (Docket No. 30), which is accompanied by a memorandum of law in support, (Docket No. 34), a Statement of Material Facts pursuant to Local Rule 56.1, (Docket No. 34-1), and an affidavit of Anthony M. Giordano, (Docket No. 30-1), with multiple exhibits attached thereto.  Plaintiff filed his opposition on February 21, 2025, (Docket No. 40), which included his response to Mazzamurro's Statement of Material Facts pursuant to Local Rule 56.1, (Docket No. 39), and a Declaration of James M. Lenihan, dated February 21, 2025, (Docket No. 38), with multiple exhibits attached thereto. Mazzamurro filed a reply on February 27, 2025. (Docket No. 42).

On January 7, 2025, the City Defendants filed a separate motion for summary judgment, (Docket No. 26), accompanied by a memorandum of law in support, (Docket No. 29), a Statement of Material Facts pursuant to Local Rule 56.1, (Docket No. 27), and a Declaration of Paul Svensson, (Docket No. 28), with multiple exhibits attached thereto.  Plaintiff filed his opposition to the City Defendants' motion on February 17, 2025, (Docket No. 37), which included his response to the City Defendants' Statement of Material Facts pursuant to Local Rule 56.1, (Docket No. 36), Plaintiff's own Statement of Material Facts, (Docket No. 35), and the Declaration of James M. Lenihan, (Docket No. 35-1), with multiple exhibits attached thereto. The City Defendants filed a reply on February 27, 2025. (Docket No. 41).

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986).  A genuine dispute as to a material fact "exists for summary judgment

purposes where the evidence is such that a reasonable jury could decide in the nonmovant's

favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Anderson v. Liberty

Lobby Inc.*, 477 U.S. 242, 247-48 (1986).  "A fact is material if it might affect the outcome of the

suit under the governing law." *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ.

2583 (LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012) (internal quotation(s) omitted).

In reviewing a motion for summary judgment, the Court "must draw all reasonable

inferences in favor of the nonmoving party" and "disregard all evidence favorable to the

moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods.*,

*Inc.*, 530 U.S. 133, 150-51 (2000) (citations omitted).  That said, the Court may not weigh the

evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of

determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250.  The moving party

bears the initial burden of "demonstrating the absence of a genuine issue of material fact."

*Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323).

Under federal law, the moving party may meet this burden by pointing to the absence of

evidence to support an essential element of the nonmoving claim. *See Tenay v. Culinary

Teachers Ass'n of Hyde Park*, 281 F. App'x 11, 12-13 (2d Cir. 2008) (summary order) ("[T]he

moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence

to support an essential element of the nonmoving party's claim.") (internal quotations(s)

omitted); *see also Hughes v. U.S.*, No. 12 Civ. 5109 (CM), 2014 WL 929837, *4 (S.D.N.Y. Mar.

7, 2014) (holding that a defendant may meet its burden by "'showing'—that is, pointing out to

the district court—that there is an absence of evidence to support the nonmoving party's case,"

but need not "raise a *prima facie* case") (quoting *Celotex*, 477 U.S. at 325).

Once the moving party has met its initial burden, the burden shifts to the nonmoving party to "present evidence sufficient to satisfy every element of the claim." *Holcomb*, 521 F.3d at 137. "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id.* (quoting *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249-50), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, Plaintiff "may not rely on conclusory allegations or unsubstantiated speculation, but must support the existence of an alleged dispute with specific citation to the record materials." *Hughes*, 2014 WL 929837, at *3 (citations and internal quotation(s) omitted); *see also* Fed. R. Civ. P. 56(c). Additionally, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. If the nonmoving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

In the Southern District of New York, the party moving for summary judgment must submit a short and concise statement of material facts it contends are undisputed, supported by evidence that would be admissible at trial. Local Civ. R. 56.1. The party opposing summary judgment must specifically controvert the moving party's statement of material facts, or the moving party's facts will be deemed admitted for purposes of the motion. Local Civ. R. 56.1(c); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."). However, "allegations of uncontested fact cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement." *Holtz v.*

- 10 -

*Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated on other grounds*, *Moll v. Telesector Res. Grp., Inc.*, No. 20-3599, 2024 WL 820179 (2d Cir. Feb. 28, 2024). "[W]here there are no[] citations or where the cited materials do not support the factual assertions in the [s]tatements, the Court is free to disregard the assertion." *Id.* (citations and internal quotation(s) omitted). The Court has discretion to conduct an assiduous review of the record even where one of the parties has failed to file such a statement. *Smith v. Yvonne*, 18 Civ. 3371 (JCM), 2023 WL 5152690, at *4 (S.D.N.Y. Aug. 10, 2023) (internal quotation(s) omitted); *see also* Fed. R. Civ. P. 56(c)(3). Nevertheless, the Court is not required to consider what the parties fail to point out." *Id.* (citing *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000)).

## III.  DISCUSSION

### A.  City Defendants' Motion

The City Defendants seek summary judgment on the grounds that (1) Plaintiff's claims are untimely; (2) the Police Officers had probable cause as a matter of law to arrest Plaintiff; and (3) the Police Officers are entitled to qualified immunity.[9] (Docket No. 29).

### 1.  Timeliness

The City Defendants claim that Plaintiff's false arrest and false imprisonment claims are untimely as a matter of law. (Docket No. 29 at 7). A claim for false arrest or false imprisonment commences from the date that the plaintiff "knew or objectively had reason to know of the

---

[9] The City Defendants also seek dismissal of Plaintiff's malicious prosecution claim if the Court finds Plaintiff has asserted such a claim. (Docket No. 29 at 11-12). The Court finds that Plaintiff has not asserted a malicious prosecution claim. Plaintiff did not plead a malicious prosecution claim in his Complaint, (Docket No. 1), nor does he reference it in his opposition to the City Defendants' motion, (Docket No. 37). Nevertheless, if Plaintiff intended to assert a malicious prosecution claim, the Court deems it abandoned. *See Gaston v. City of New York*, 851 F. Supp. 2d 780, 796 (S.D.N.Y. 2012) (dismissing the plaintiff's claims as abandoned because he "failed to respond or even mention these claims in his opposition brief to defendants' summary judgment motion") (citations omitted). The City Defendants also moved for summary judgment on Plaintiff's *Monell* claim against Defendant City of Peekskill. (Docket No. 29 at 14). However, Plaintiff withdrew his *Monell* claim in his opposition to the City Defendants' motion. (Docket No. 37 at 9-10). Therefore, the *Monell* claim is deemed withdrawn.

alleged violation." *Martinez v. City of New York*, 476 F. Supp. 2d 330, 331 (S.D.N.Y. 2007)
(finding that the plaintiff knew or had reason to know of the alleged false arrest as of the date of
the arrest).  Here, the Plaintiff knew of his arrest on the day of his arrest, August 13, 2020.

"The statute of limitations for claims brought under Section 1983 is governed by state
law[.]" *Livingston v. Mejia*, 20 Civ. 2009 (JPC), 2022 WL 976808, at *4 (S.D.N.Y. Mar. 31,
2022) (quoting *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009)).  Under New York
law, the statute of limitations for a false arrest or false imprisonment claim is three years. *See
Livingston*, 2022 WL 976808, at *4; *Mercano v. City of New York*, 15 Civ. 3544 (LGS), 2017
WL 1969676, at *3 (S.D.N.Y. May 12, 2017).  The City Defendants argue that Plaintiff's action
should have been filed by August 13, 2023, three years after his August 13, 2020 arrest. (Docket
No. 29 at 7).  However, the three-year statute of limitations for Plaintiff's claims expired on
Monday, August 14, 2023. *See* Fed. R. Civ. P. 6(a)(1)(c) ("[I]f the last day is a Saturday, Sunday,
or legal holiday, the period continues to run until the end of the next day that is not a Saturday,
Sunday, or legal holiday.").  Thus, since Plaintiff filed his action on August 14, 2023, it is timely.

## 2. False Arrest and False Imprisonment

The City Defendants argue that Plaintiff's false arrest and false imprisonment claims fail
because the Police Officers had probable cause to arrest Plaintiff. (Docket No. 29 at 8-9).
Specifically, the City Defendants claim that they received "consistent, reliable information from
[Mazzamurro] who asserted that [Plaintiff] threatened her personal safety with a knife," and the
record "plainly establishes a basis for the charge of menacing." (*Id.* at 9, 11).  Plaintiff responds
that the Police Officers did not sufficiently investigate Mazzamurro's claims. (Docket No. 37 at
13-15).  Instead, Plaintiff contends Officer Nappi employed a "shoot first, ask questions later"
approach. (*Id.* at 16).  Plaintiff further argues that Officer Nappi failed to collect "reasonably

trustworthy information of facts and circumstances," and arrested Plaintiff although there were

multiple witnesses and Plaintiff "categorically denied [Mazzamurro's] version of the events."

(*Id.* at 15, 17) (internal quotations omitted).

In the Second Circuit, courts analyzing Section 1983 claims have "generally looked to the

law of the state in which the arrest occurred." *Weilburg v. Koss*, No. 24-2234-cv, 2025 WL

1157080, at *1 (2d Cir. Apr. 21, 2025) (summary order) (quoting *Jaegly v. Couch*, 439 F.3d 149,

151-52 (2d Cir. 2006)).  "To establish a successful false arrest claim, a plaintiff must show that

'(1) the defendant intended to confine [him], (2) the plaintiff was conscious of the confinement,

(3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise

privileged.'" *Xifei Xu v. City of New York*, No. 18-CV-1222 (RA), 2020 WL 2088301, at *4

(S.D.N.Y. Apr. 30, 2020) (quoting *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996)).  Here, the

parties do not dispute that Plaintiff was arrested.  The only dispute is whether the arrest was

justified.

Under New York law, "[t]he existence of probable cause to arrest constitutes justification

and is a complete defense to an action for false arrest[.]" *Gonzalez v. City of Schenectady*, 728

F.3d 149, 155 (2d Cir. 2013) (quoting *Weyant*, 101 F.3d at 852).  "In general, probable cause to

arrest exists when the officers have knowledge or reasonably trustworthy information of facts

and circumstances that are sufficient to warrant a person of reasonable caution in the belief that

the person to be arrested has committed or is committing a crime." *Weyant*, 101 F.3d at 852.

Whether or not probable cause exists may be determined as a matter of law if there is no dispute

as to the relevant events and the police officers' knowledge. *Id.*  The inquiry depends on

"whether the arresting officer had 'probable cause to believe that the person arrested has

committed any crime,' not solely the crime for which the person was actually arrested." *Xifei Xu*,

2020 WL 2088301, at *5 (quoting *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir.

2007) (emphasis added)); *see also Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016) ("The

existence of probable cause to arrest—even for a crime other than the one identified by the

arresting officer—will defeat a claim of false arrest under the Fourth Amendment.").

   "When determining whether probable cause exists[,] courts must consider those facts

available to the officer at the time of the arrest and immediately before it." *Kayo v. Mertz*, 531 F.

Supp. 3d 774, 789 (S.D.N.Y. 2021) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir.

2006)).  "[P]robable cause exists even where it is based upon mistaken information, so long as

the arresting officer was reasonable in relying on that information." *Aberra v. City of New York*,

No. 21-1992, 2023 WL 221096, at *1 (2d Cir. Jan. 18, 2023) (summary order) (quoting *Bernard

v. United States*, 25 F.3d 98, 103 (2d Cir. 1994)).  Additionally, "[a] victim's identification of an

assailant is, by itself, sufficient 'probable cause to effect an arrest absent circumstances that raise

doubts as to the victim's veracity.'" *Virgil v. Town of Gates*, 455 F. App'x 36, 38 (2d Cir. 2012)

(summary order) (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)).

   The Court finds that the Police Officers had probable cause to arrest Plaintiff for

Menacing in the Second Degree.  A person is guilty of Menacing in the Second Degree when

"[h]e or she intentionally places or attempts to place another person in reasonable fear of

physical injury, serious physical injury or death by displaying a deadly weapon, dangerous

instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other

firearm[.]" Penal Law § 120.14(1).  Here, it is undisputed that the Police Officers were

dispatched based on a 911 call made by Mazzamurro, alleging that Plaintiff threatened her with a

knife. (Docket Nos. 27 ¶ 16; 36 ¶ 16).  When the Police Officers arrived on the scene,

Mazzamurro and her brother reiterated that Plaintiff threatened them with a knife, told the Police

Officers that Plaintiff threatened to slash Mazzamurro's tires, and identified Plaintiff as the individual making the threats. (Docket Nos. 27 ¶¶ 26, 31; 36 ¶¶ 26, 31; *see also* Docket No. 28-6 at 20:39:29-34). In addition, Mazzamurro stated that she believed Plaintiff may have disposed of the knife in some nearby bushes—which Mr. Duque was searching when the Police Officers arrived—before going inside. (Docket No. 28-6 at 20:38:25-40; 20:39:00-10). When the Police Officers spoke with Plaintiff's friend, Mr. Burnett, he admitted Plaintiff was angry and confirmed that Plaintiff threatened to slash Mazzamurro's tires. (Docket Nos. 27 ¶ 33; 36 ¶ 33). Although Plaintiff denied threatening Mazzamurro and having a knife, nothing in the record suggests that the Police Officers had reason to doubt the veracity of Mazzamurro's allegations before they arrested Plaintiff, especially since Plaintiff's friend corroborated Mazzamurro's testimony in part. In fact, Mazzamurro's identification of Plaintiff as the individual who threatened her with a knife was, by itself, sufficient to establish probable cause.

Nevertheless, Plaintiff argues that Officer Nappi failed to investigate and should have interviewed more witnesses because, when he conferred with Mazzamurro "no less than three times," she embellished her story on each occasion, even suggesting that Plaintiff had an "imposing" weapon similar to a machete. (Docket No. 37 at 14, 16). While Officer Nappi may not have questioned every witness, it is clear based on the Bodycam footage that he was present when Officer Nolte separately questioned Mr. Burnett and Plaintiff. (Docket No. 28-6 at 20:37:40-50; 20:39:56–20:40:22). Furthermore, there is no evidence that Mazzamurro gave false information or contradicted herself that evening. Her key accusation—that Plaintiff threatened her with a knife—never changed. Once Officer Nappi determined that probable cause existed, he was "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *See Little v. City of New York*, 487 F. Supp. 2d 426, 439 (S.D.N.Y.

2007) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)); *Virgil*, 455 F.

App'x at 40 (finding that once probable cause is established, "there is no constitutional right …

to demand further investigation before arrest or prosecution").  Moreover, even if Plaintiff did

not have a knife, the fact that the Police Officers relied on this mistaken information is not

enough to defeat probable cause. *See Aberra*, 2023 WL 221096, at *1.

 Accordingly, the Court grants the City Defendants' motion for summary judgment on

Plaintiff's false arrest claim.  In addition, since false imprisonment shares the same elements as

false arrest under New York law, the Court grants summary judgment on Plaintiff's false

imprisonment claim also. *See Minott v. City of New York*, 11 Civ. 1217 (PGG), 2012 WL

13388815, at *4 n.3 (Sept. 7, 2012) ("To the extent that Plaintiff alleges both false arrest and

false imprisonment, they are considered synonymous causes of action."); *see also Shaheed v.

City of New York*, 287 F. Supp. 3d 438, 448 (S.D.N.Y. 2018) (describing false arrest as a

"species of false imprisonment, such that the two share the same elements under New York

law") (internal quotation(s) omitted)).

### 3.  Qualified Immunity

 Even assuming, *arguendo*, that the Police Officers did not have probable cause to arrest

Plaintiff for Menacing in the Second Degree, the Court nonetheless finds that the Police Officers

are protected by qualified immunity.  Where probable cause is absent, "an arresting officer is still

entitled to qualified immunity if he can establish that there was 'arguable probable cause.'"

*Wheeler v. Kolek*, 16-cv-7441 (PMH), 2020 WL 6726947, at *7 (S.D.N.Y. Nov. 16, 2020).

"Arguable probable cause exists if either (a) it was objectively reasonable for the officer to

believe that probable cause existed, or (b) officers of reasonable competence could disagree on

whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir.

2004) (internal quotation(s) omitted). "[U]nder this standard, an arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show ... that officers of reasonable competence could disagree on whether the probable cause test was met." *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 39 (E.D.N.Y. 2015) (alteration in original) (internal quotation(s) omitted); *see also Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) ("Probable cause does not require absolute certainty. Moreover, if police officers of reasonable competence could disagree as to whether there was sufficient probable cause, there is 'arguable' probable cause sufficient to warrant qualified immunity for the defendant officers.").

The Second Circuit has held that an officer is protected by qualified immunity, and summary judgment on a false arrest claim is appropriate, if "a rational jury could *not* find that the officers' judgment was so flawed that no reasonable officer would have made a similar choice." *Rine v. Giardina*, 199 F.3d 1323 (2d Cir. 1999) (quoting *Lennon v. Miller*, 66 F.3d 416, 424-25 (2d Cir. 1995)) (emphasis in original). Here, the Police Officers' finding that probable cause existed to arrest Plaintiff for Menacing in the Second Degree was not so flawed that no reasonable officers would have made a similar choice.

Accordingly, the Court finds that the Police Officers are entitled to qualified immunity on Plaintiff's false arrest and false imprisonment claims.

**B. Mazzamurro's Motion**

Mazzamurro moves for summary judgment on Plaintiff's negligence claim on two grounds. Mazzamurro claims that: (1) Plaintiff's complaint violated Federal Rule of Civil Procedure 8 because it fails to include a short, plain statement of the grounds for the Court's jurisdiction; and (2) since there is no viable cause of action asserted against her, the Court should

not extend supplemental jurisdiction over this state law claim. (Docket No. 34 at 11).  Plaintiff

maintains that he has sufficiently alleged a negligence claim against Mazzamurro. (Docket No.

40 at 14-18).

Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief

must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless

the court already has jurisdiction … (2) a short and plain statement of the claim showing that the

pleader is entitled to relief; and (3) a demand for the relief sought[.]" Fed. R. Civ. P. 8(a).  In the

Second Circuit, "[a] short and plain statement must simply give the defendant fair notice of what

the plaintiff's claim is and the grounds upon which it rests." *Gmurzynka v. Hutton*, 355 F.3d 206,

209 (2d. Cir. 2004) (internal quotation(s) omitted).  "Fair notice is that which will enable the

adverse party to answer and prepare for trial, allow the application of res judicata, and identify

the nature of the case so it may be assigned the proper form of trial." *Ong v. Park Manor*

*(Middletown Park) Rehab. and Healthcare Ctr.*, 51 F. Supp. 3d 319, 345 (S.D.N.Y. 2014)

(quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  In addition, the complaint must

assert a viable claim for relief. *See Hall v. Crestwood Lake Section 8 Holding Corp.*, 24-CV-

3657 (LTS), 2024 WL 3876676, at *3 (S.D.N.Y. Aug. 19, 2024) ("[The plaintiff's] complaint

does not comply with Rule 8 because it does not contain a short and plain statement showing that

she is entitled to relief.  [She] appears to be attempting to assert claims under federal law, but her

allegations do not state a viable claim under any federal law.").

Here, Plaintiff alleges that Mazzamurro was "negligent in [her] handling of the situation

and acted in an unreasonable manner throughout the course of the evening." (Docket No. 1 ¶ 35).

Plaintiff argues in his opposition that Mazzamurro had a legal duty to make truthful allegations

when filing a complaint against the Plaintiff, and breached this duty numerous times on August

- 18 -

13, 2020. (Docket No. 40 at 15-16).  Plaintiff also asserts that he was injured by Mazzamurro's

negligence. (Docket No. 1 ¶ 36).  However, "New York does not recognize negligence claims

premised on wrongful arrest, imprisonment or prosecution." *Lopez v. City of New York*, No. 14

Civ. 1660 (PKC), 2014 WL 5090041, at *4 (S.D.N.Y. Oct. 10, 2014); *see also Ellis v. Gannon*,

No. 10–CV–1373, 2011 WL 5513184, at *6 (E.D.N.Y. Nov. 10, 2011) ("For claims seeking

damages based upon a purportedly unlawful arrest and prosecution, a plaintiff must resort to the

traditional remedies of false imprisonment and malicious prosecution and cannot recover under

the broader principles of negligence.") (internal quotation(s) omitted).  Because Plaintiff's

negligence claim against Mazzamurro is premised on a wrongful arrest allegation, it fails as a

matter of law.

Furthermore, Plaintiff points to no duty of care that Mazzamurro owed him which is

recognized in law, and the Court cannot find one.  Thus, Plaintiff's negligence claim fails on this

ground also. *See Lazar v. City of New York*, 21 Civ. 1748 (LGS), 2022 WL 2953934, at *4

(S.D.N.Y. July 26, 2022) (finding that the filing of a false police report was unsuccessfully

alleged as a negligence claim in part because the filing party did not owe a duty of care to the

plaintiff).  In addition, to the extent Plaintiff is asserting a negligence claim against Mazzamurro

based on her intentional acts, that also fails.  "A claim of harm predicated solely on intentional

acts may not give rise to a claim of negligence." *See Ortiz v. City of New York*, 15-Cv-2206

(DLC), 2016 WL 7009059, at *3 (S.D.N.Y. Nov. 30, 2016).  Therefore, Plaintiff's claim that

Mazzamurro engaged in the intentional act of providing false information to the City Defendants

is insufficient to support a negligence claim.

Accordingly, Mazzamurro's motion for summary judgment is granted.[10]

_____

[10] Mazzamurro claims that the statute of limitations has expired on any claim of false arrest, false imprisonment, or
malicious prosecution against her. (Docket No. 34 at 12-14).  Plaintiff concedes this fact, and withdraws those

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motions are granted in their entirety.  The Clerk

of Court is respectfully requested to terminate the pending Motions (Docket Nos. 26, 30, 33, 34,

42), enter judgment for Defendants, and close the case.

Dated:    July 14, 2025
          White Plains, New York

                                        **SO ORDERED:**

                                        *Judith C. McCarthy*
                                        _____
                                        JUDITH C. McCARTHY
                                        United States Magistrate Judge

---

claims, if plead. (Docket No. 40 at 12).  Plaintiff further confirmed in his opposition that his only claim against
Mazzamurro is negligence.  Thus, the Court will not address any other arguments made by Mazzamurro.